UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY BROWN, SR., Plaintiff, v. LEAH TANNER, et al., Defendants. | CASE NO. CV 19-2621 PSG (PJW) REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION TO DISMISS |

This Report and Recommendation is submitted to the Hon. Philip S. Gutierrez, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California. For the reasons discussed below, it is recommended that Defendants' motion to dismiss the Complaint with prejudice be granted.

I.

SUMMARY OF FACTS AND PROCEEDINGS

In 2010, while Plaintiff was a pretrial inmate at Los Angeles County Men's Central Jail, he was recruited by the Federal Bureau of Investigation ("FBI") to assist in their investigation of corruption within the Los Angeles County Jail. (Compl. at ¶¶ 8, 16.) Plaintiff was asked by the FBI to find corrupt Los Angeles County Sheriff

Department ("LASD") deputies who were willing to smuggle drugs and other contraband into the jail in exchange for bribes. (Compl. at ¶ 17.) Plaintiff found a willing LASD deputy, Deputy Michel, and arranged for him to meet with an undercover FBI agent. Michel met with the agent and accepted payment in exchange for delivering Plaintiff a cell phone and drugs that the FBI provided the deputy. (Compl. at ¶¶ 17, 18.) After receiving the phone from Michel, Plaintiff used it to provide information to the FBI about what was happening in the jail. (Compl. at ¶¶ 18, 32.) Plaintiff sold the drugs to other inmates. (Compl. at ¶¶ 40-41.)

In August 2011, LASD deputies discovered that Plaintiff had a phone. He disclosed to the deputies at that time that he was working for the FBI. (Compl. at ¶ 19.) In response, LASD started moving Plaintiff from one jail to another in an attempt to prevent the FBI from finding him, keeping him hidden by changing his name and booking number each time they moved him. (Compl. at ¶ 19.) On September 12, 2011, LASD booked Plaintiff under his real name again and moved him to Lancaster State Prison. (Compl. at ¶ 20.) Defendant FBI Agents Tanner, Dahle, and Dalton went to Lancaster to debrief Plaintiff on the ongoing investigation and returned thereafter to speak with him. (Compl. at ¶ 20.) During one of the meetings in 2011 or 2012, Plaintiff told the agents that Michel was smuggling drugs and contraband into the jail.

According to Plaintiff, in August 2012, federal prosecutors planted a story in the Los Angeles Times to discredit him in an effort to prevent him from testifying for the defense in an upcoming trial. (Compl. at ¶ 31.) On December 5, 2012, Plaintiff testified before a

grand jury. (Compl. at ¶ 53, and Exh. 5-A, p. 1.[1]) The grand jury indicted several deputies.

On February 11, 2014, attorneys for the indicted deputies met with Plaintiff and asked him to testify on the deputies' behalf at the upcoming criminal trial. (Compl. at ¶ 33.) Approximately one week later, Defendants Tanner, Dalton, and Dahle visited Plaintiff and asked him what he had told the defense counsel. (Compl. at ¶ 34.) Plaintiff told them that he had told the attorneys what had happened at the jail, including that Michel had brought him drugs and a cell phone. (Compl. at ¶¶ 34, 46.) On April 23, 2014, Defendant Tanner met with Plaintiff and told him that he needed to testify at the deputies' trial. (Compl. at ¶¶ 35, 46.) Plaintiff never testified, however. Instead, he was moved to various jails in different counties until the trial was over. (Compl. at ¶¶ 35, 46.)

Plaintiff wrote to a federal judge and explained to him that the Defendants were trying to hide him to prevent him from testifying. (Compl. at ¶¶ 36-38.) Plaintiff claims that the judge ordered Defendants to move Plaintiff to the "federal lock-up" in Los Angeles. (Compl. at ¶ 38.) A lawyer later came to visit Plaintiff there and told him that AUSAs Fox and Rhodes had told the lawyer that "Plaintiff is no victim and will be prosecuted as well." (Compl. at ¶¶ 39, 45.) According to Plaintiff, AUSA Fox gave him "a piece of paper signed by Defendant Fox for immunity." (Compl. at ¶ 42.)

Plaintiff alleges that, while he was working with Defendants, he showed them evidence that he had been wrongfully convicted in state court due to misconduct by Los Angeles police officers, but that

[1] The Court uses the page number inserted on the pleadings by the electronic docketing system.

Defendants took no action to investigate his claims. (Compl. at ¶ 73.) He claims that the agents treated other witnesses better than they treated him, which he attributes to the fact that he is Black and the others are not. (Compl. at ¶ 103.)

## II.

## ANALYSIS

Plaintiff brings this suit against Defendants FBI Special Agents Leah Tanner, Jason Dalton, and David Dahle and AUSAs Brandon D. Fox and Lizabeth A. Rhodes under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). He claims that Defendants: (1) retaliated against him for exercising his First Amendment right to free speech and denied him his constitutional right to testify in court; (2) conspired to violate his civil rights by sequestering him; (3) discriminated against him on the basis of his race; and (4) failed to "take corrective action." (Compl. at 14.)

Defendants move to dismiss the Complaint with prejudice on the grounds that Plaintiff's claims are barred by the statute of limitations and his claims against the AUSAs are barred by absolute prosecutorial immunity. (Motion at 10-19.) Plaintiff opposes the motion. For the reasons set forth below, the Court concludes that Defendants are entitled to dismissal with prejudice.

### A. Standard of Review

In reviewing a motion to dismiss, the Court accepts as true the factual allegations contained in the complaint and views all inferences in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). The Court does not, however, "accept as true allegations that are merely conclusory, unwarranted deductions

of fact, or unreasonable inferences." *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001), *amended on other grounds by* 275 F.3d 1187 (2001). The Court construes *pro se* pleadings liberally. *See Barrett v. Belleque*, 544 F.3d 1060, 1061-62 (9th Cir. 2008) (per curiam).

B. Plaintiff's Claims are Barred

i. Plaintiff's Claims are Untimely

Plaintiff's claims center on actions that occurred in 2010-14. There is a two-year statute of limitations governing federal civil rights suits in California, which is extended to four years for prisoners. *See See Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (explaining statute of limitations for federal civil rights claims is governed by state statute of limitations for personal injury actions); Cal. Code. Civ. P. §§ 335.1 (two-year statute of limitations for personal injury actions) and 352.1 (two-year tolling period for prisoners). Plaintiff filed suit in April 2019, well after the statute of limitations had run. As such, his claims are barred under the statute of limitations.

Plaintiff tries to get around the statute by arguing that he did not fully understand the extent of Defendants' misconduct until after he obtained transcripts from some of the trials involving the Sheriff's Department, including Sheriff Baca's trial in 2017. These arguments are rejected. Plaintiff knew in 2012 that the government had misgivings about him testifying in the first trial and was aware in 2014 that he had not been called to testify in either trial, the second of which concluded in September of that year.[2] The statute of

[2] Plaintiff did not testify on behalf of the federal government or for the indicted LASD deputies at the deputies' criminal trials.

limitations started to run in 2014 when Plaintiff knew these facts, not when he understood all the details and the significance of them. *See W. Ctr. For Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir. 2000) (explaining *Bivens* claim accrues when plaintiff has notice of the wrongful conduct, not all the details). Plaintiff's failure to file suit within four years of that date is fatal to his claims.

ii. Defendant Prosecutors are Shielded from Suit Under the Doctrine of Prosecutorial Immunity

Plaintiff alleges that AUSAs Fox and Rhodes violated his rights when they elected not to call him as a witness in the deputies' case and, at the same time, prevented him from testifying on behalf of the deputies. As Defendants point out, however, they are absolutely immune from suit for decisions they made and actions they took in prosecuting the case against the deputies. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *Garmon v. County of Los Angeles*, 828 F.3d 837, 842 (9th Cir. 2016); *see also Kalina v. Fletcher*, 522 U.S. 118, 131 (1997). This includes Plaintiff's claims that they encouraged a witness to lie and lied during closing argument. (*See* Compl. at ¶¶ 22, 42, 48, 69, 82, 94.)[3]

iii. Plaintiff's Claims for Injunctive and Declaratory Relief are Denied

In light of the Court's dismissal with prejudice of the Plaintiff's substantive claims, his claims for injunctive and declaratory relief are denied.

---

[3] Plaintiff did not address a number of Defendants' arguments in his opposition to their motion. The Court interprets this failure as a concession on Plaintiff's part that these defenses are meritorious. As such, the Court concludes that Defendants are entitled to qualified immunity and that Plaintiff has failed to state a claim for racial discrimination, retaliation, duty to investigate, and *Bivens*, all of which are alternative grounds for granting Defendants' motion.

C. Dismissal is with Prejudice

Generally speaking, the Court gives pro se plaintiffs more than one opportunity to craft a complaint that can survive a motion to dismiss. But, in the case at bar, it is clear that nothing Plaintiff can say or do can fix his Complaint. Plaintiff is trying to sue prosecutors and federal agents for actions they took many years ago. Plaintiff waited too long to bring this suit, however, and his case against the prosecutors is barred because they have absolute immunity for what they did. All the tinkering in the world will not change these basic facts and, therefore, Plaintiff is not entitled to leave to amend.

III.

RECOMMENDATION

For these reasons, IT IS RECOMMENDED that the Court issue an Order: (1) accepting this Report and Recommendation; (2) granting Defendants' motion to dismiss; and (3) directing that Judgment be entered dismissing the Complaint with prejudice.

DATED: April 10, 2020.

Patrick J. Walsh

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

C:\Users\ericavalencia\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\0MSETIRA\RR DS' MTD.wpd